FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LIZETH A.,<br><br>            Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>            Defendant. | No. 1:17-cv-03074-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 13, 14 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion (ECF No. 13) and denies Defendant's motion (ECF No. 14).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 4

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed an application for Title XVI supplemental security income benefits on December 4, 2013, alleging a disability onset date of the same date. Tr. 139-44. The application was denied initially, Tr. 81-88, and on reconsideration, Tr. 92-97. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 25, 2015. Tr. 35-59. On October 20, 2015, the LAJ denied Plaintiff's claim. Tr. 17-34.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 4, 2013. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: affective disorder and eating disorder. Tr. 22. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can "perform simple, routine tasks, and have only superficial interaction with co-workers and incidental interaction with the public." Tr. 24.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 29.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, conveyor feeder, cleaner, pricing marker, and package sorter.  Tr. 29-30.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from December 4, 2013 through October 20, 2015, the date of the ALJ's decision.  Tr. 30.

On February 15, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title XVI of the Social Security Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ's RFC formulation is supported by substantial evidence.

ECF No. 13 at 4.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 13 at 16-20. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81

F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of her symptoms was not entirely credible. Tr. 27.

### 1. Lack of Supporting Medical Evidence

The ALJ concluded that the objective medical evidence failed to support Plaintiff's symptom testimony. Tr. 27. Plaintiff challenges this conclusion, ECF No. 13 at 19-20, and the Commissioner now declines to rely on this finding. ECF

No. 14 at 4 n.2. This was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 2. *Academic Performance*

The ALJ concluded that Plaintiff's academic performance in high school undermined her testimony about her difficulty focusing. Tr. 27. An ALJ may consider good academic performance as an activity that is inconsistent with a claimant's reported functioning. *See Anderson v. Astrue*, No. 09-CV-220-JPH, 2010 WL 2854241, at *6 (E.D. Wash. July 19, 2010); *Payton v. Comm'r of Soc. Sec.*, No. CIV S-09-0879-CMK, 2010 WL 3835732, at *10 (E.D. Cal. Sept. 29, 2010); *see also Spittle v. Astrue*, No. 3:11-CV-00711-AA, 2012 WL 4508003, at *3 (D. Or. Sept. 25, 2012). Here, however, the ALJ's finding is not supported by substantial evidence.

Evidence that predates the claimant's alleged onset date is of limited relevance. *See Carmickle v. Comm'r, Soc. Sec. Amin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Tesfamariam v. Colvin*, No. 15-CV-04966-LHK, 2016 WL 4270243, at *10 (N.D. Cal. Aug. 15, 2016). The ALJ noted that Plaintiff reported getting C's in high school and dropping out during the first half of her senior year. Tr. 56-57. Plaintiff was born in 1992, which would indicate that she left high school in approximately 2009-2010. Tr. 29. Plaintiff's alleged onset date is December 4, 2013. Tr. 20. The ALJ failed to explain how Plaintiff's alleged ability to focus

well enough in high school to receive average grades was relevant to her symptom testimony about the period of alleged disability, three to four years later.

The Commissioner argues that this evidence is relevant due to the longstanding nature of Plaintiff's impairment. ECF No. 14 at 6. Plaintiff reported some mental health symptoms dating back to middle school. *See* Tr. 343. However, the record indicates that Plaintiff's alleged onset date follows a severe deterioration in her mental health in May 2013, prompted by the breakup of a long-term relationship. Tr. 235, 277, 343, 350. The ALJ acknowledged that Plaintiff's two psychiatric hospitalizations in May and July 2013 marked a "significant deterioration" in her condition. Tr. 25. Without further explanation of how Plaintiff's high school grades from several years prior to this deterioration were relevant to her symptom testimony about the alleged period of disability, the ALJ's conclusion is not supported by substantial evidence.

### 3. Statements of Perceived Ability

The ALJ found that Plaintiff's perceived ability to work undermined her claims of complete disability. Tr. 27. Plaintiff's own perception of her ability to work may be a proper consideration in determining credibility. *See Barnes v. Comm'r of Soc. Sec.*, No. 2:16-cv-00402-MKD, 2018 WL 545722, at *5 (E.D. Wash. Jan. 24, 2018). Here, the ALJ observed that Plaintiff reported participating in the Job Corps program, pursuing work at a daycare, and pursuing online

courses. Tr. 27; *see* Tr. 44, 373, 375. However, Plaintiff's perceived ability to pursue online courses does not indicate Plaintiff is capable to work on a full-time basis. Similarly, Plaintiff was unsuccessful in the Job Corps program and was granted a medical separation from the program due to her symptoms. Tr. 365. Even if Plaintiff believed that she was capable of pursuing these activities, on this record, they do not suggest that Plaintiff had more focus and energy than she alleged. Tr. 27. This was not a specific and legitimate reason to discredit Plaintiff's subjective symptom testimony.

### 4. Effective Treatment

The ALJ found Plaintiff's symptom testimony was less credible because "her condition was improving" with medication. Tr. 27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Plaintiff testified at the hearing that she used to experience debilitating panic attacks, but that they recently subsided

due to medication. Tr. 44-45. The ALJ relied on this statement to conclude that Plaintiff's "condition was improving, contrary to her allegations." Tr. 27.

Although the record supports the ALJ's finding that Plaintiff's panic attacks subsided with medication, the ALJ relied on this fact to conclude more broadly that Plaintiff's condition overall improved with treatment. *Id.* The ALJ's conclusion of general improvement based on the improvement of one of Plaintiff's symptoms is not supported by substantial evidence. Observations of improvement must be "read in context of the overall diagnostic picture" of an individual, and improvement in some symptoms does not indicate nondisability under the Social Security Act. *Ghanim*, 763 F.3d at 1161-62 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. Although Plaintiff's panic attacks may have subsided with medication, the record shows Plaintiff's overall condition was not improving with treatment. *See* Tr. 270 (reported fatigue and depression on November 18, 2013); Tr. 341 (reports depressive symptoms on February 11, 2014); Tr. 349 (PHQ-9 score consistent with major depression on April 4, 2014); Tr. 382 (PHQ-9 score consistent with moderate depression on July 9, 2014); Tr. 380 (Plaintiff losing weight and PHQ-9 score consistent with major depression on August 8, 2014); Tr. 378 (Plaintiff not gaining weight and PHQ-9 score consistent with moderate depression on

September 8, 2014); Tr. 375 (PHQ-9 score consistent with moderate depression on October 16, 2014); Tr. 365 (Plaintiff was granted medical separation from Job Corps on April 28, 2015, due to weight loss and need to stabilize depressive symptoms); Tr. 362 (Plaintiff still losing weight on May 1, 2015); Tr. 358 (Plaintiff reported depressive symptoms on June 1, 2015).  The ALJ's observation that Plaintiff's panic attacks subsided with medication is supported by substantial evidence, but the more general conclusion that Plaintiff's overall condition "was improving" was not similarly supported.  This was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 5.  Daily Activities

The ALJ found that Plaintiff's daily activities indicated she was "still quite functional."  Tr. 27.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the

claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted). The ALJ noted Plaintiff testified to feeling depressed, difficulty concentrating, and substantial fatigue. Tr. 24. The ALJ observed Plaintiff reported daily household chores including vacuuming, doing the dishes, and doing yardwork. Tr. 27; *see* Tr. 255. Plaintiff also testified that she prepares meals for her housemates. Tr. 50. The ALJ could reasonably conclude that Plaintiff's ability to complete these household chores was inconsistent with the fatigue symptoms Plaintiff alleged.

### 6. *Lack of Engagement with Treatment*

The ALJ concluded that Plaintiff's failure to consistently engage with treatment undermined her subjective symptom testimony. Tr. 27. Unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn*, 495 F.3d at 638. Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it is inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Furthermore, disability benefits may not be denied

because of the claimant's failure to obtain treatment she cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Here, the ALJ found that Plaintiff's failure to consistently engage with treatment "suggests that she did not have a pressing need to mitigate or improve her condition, suggesting that her condition was tolerable," therefore undermining her credibility. Tr. 27.

The record reflects that some of Plaintiff's failure to engage in treatment was attributable to anxiety or a lack of health insurance. Plaintiff declined a recommendation to group therapy due to her social anxiety. Tr. 343. Some instances of Plaintiff's failure to seek health care were attributed to her lack of insurance. Tr. 339 (Plaintiff reported she could not get treatment because she did not have insurance); Tr. 277 (Plaintiff had no health insurance and no medical coupons); Tr. 270-272 (Plaintiff began seeking referrals after obtaining Medicaid health insurance). However, the ALJ accurately observed that once Plaintiff did begin treatment, she only attended monthly counseling despite being recommended weekly counseling.[1] Tr. 27; *see* Tr. 257 (weekly counseling recommended on

---

[1] Plaintiff contends that "recommended treatment" is different from "prescribed treatment." ECF No. 13 at 18. However, the Ninth Circuit has applied "prescribed treatment" case law to instances of "recommended treatment." *Crosby v. Comm'r*

ORDER - 16

September 12, 2013); Tr. 382 (weekly sessions recommended on July 9, 2014); Tr. 368 (weekly depression group recommended on March 18, 2015); Tr. 362 (weekly sessions recommended on May 1, 2015); Tr. 356 (weekly outpatient treatment recommended on June 1, 2015). Plaintiff also failed to complete counseling homework and to pick up her prescriptions. *See* Tr. 368, 373. It is the ALJ's responsibility to resolve conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable, it should not be second-guessed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, although some of Plaintiff's failure to seek treatment may have been attributable to anxiety or finances, the ALJ still reasonably concluded that Plaintiff's failure to engage in treatment undermine her subjective symptom testimony. This finding was supported by substantial evidence.

Of the many reasons offered by the ALJ to discredit Plaintiff's symptom testimony, only two were minimally supported by evidence in the record. The Court finds that, on balance, that ALJ's overall credibility analysis is not supported by substantial evidence. This case is therefore remanded for the ALJ to reconsider Plaintiff's symptom testimony.

---

*of Soc. Sec. Admin.*, 489 Fed. Appx. 166, 2012 WL 2917029, at *1 (9th Cir. July 18, 2012).

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Philip Barnard, Ph.D., Phyllis Sanchez, Ph.D., Michael Brown, Ph.D., and Bruce Eather, Ph.D. ECF No. 13 at 5-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan,* 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Barnard

Dr. Barnard, the only non-reviewing source in the record, examined Plaintiff on September 12, 2013, and opined Plaintiff had moderate impairments in her ability to understand, remember, and persist in tasks by following very short and simple instructions; learn new tasks; adapt to changes in a routine work setting; make simple work-related decisions; be aware of normal hazards and take precautions; and set realistic goals and plan independently; and marked impairments in her ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; perform routine tasks without special supervision; ask simple questions or request assistance; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work

setting. Tr. 255-259. The ALJ gave this opinion limited weight. Tr. 28. Because Dr. Barnard's opinion was contradicted by Dr. Brown, Tr. 66-67, and Dr. Eather, Tr. 77-78, the ALJ was required to provide specific and legitimate reasons for rejecting this opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Barnard's opinion was rendered on a checkbox form that was not explained or supported. Tr. 28. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). In addition to noting the checkbox format, the ALJ concluded that Dr. Barnard's opinion was not explained and not supported. Dr. Barnard opined Plaintiff's impairments would cause moderate interference with her ability to work on a daily basis, yet opined more severe marked limitations in several basic work activities. *Compare* Tr. 256 *with* Tr. 257.

Dr. Barnard did not explain how moderate findings indicated marked impairments. Tr. 257. The ALJ reasonably concluded that Dr. Barnard's opined limitations were entitled to less weight because they were not explained.

Second, the ALJ discredited Dr. Barnard's opinion because Dr. Barnard did not have access to Plaintiff's subsequent treatment notes, which the ALJ characterized as showing Plaintiff improved with medication. Tr. 28. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Plaintiff's chief complaint to Dr. Barnard was that she experienced panic attacks. Tr. 255. As the ALJ accurately noted, Plaintiff's panic attacks later subsided with medication. Tr. 28; *see* Tr. 44-45. The fact that Dr. Barnard was not familiar with Plaintiff's subsequent treatment notes showing improvement in panic attacks was a specific and legitimate reason to discredit his opinion based on Plaintiff's reports of panic attacks.

Third, the ALJ found Dr. Barnard's opinion was inconsistent with Plaintiff's treatment notes. Tr. 28. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ concluded "there is no indication in the claimant's treatment notes that she had marked restrictions or limitations." Tr. 28. However, "[t]he ALJ must do more than state conclusions.

He must set forth his own interpretations and explain why they, rather than the

doctors' are correct." *Garrison*, 759 F.3d at 1012 (internal citations omitted).

Here, the ALJ cited no evidence to support this conclusion. Tr. 28. Without

further explanation of how this record supported the ALJ's conclusion, this was not

a specific and legitimate reason to discredit Dr. Barnard's opinion.

Here, the ALJ relied on at least one reason that was not supported by

substantial evidence in rejecting the opinion. Because this case is remanded for the

ALJ to reconsider Plaintiff's subjective symptom testimony, the ALJ is also

instructed to reconsider the medical opinion evidence on remand.

### 2. Additional Assignments of Error

Although Plaintiff challenges additional medical opinions, the Court will not

address each challenge individually. The ALJ is instructed to readdress all of the

medical evidence on remand in a manner consistent with this opinion.

### C. Remand

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 13 at 11, 20. To do so, the Court must find that the record has been fully

developed and further administrative proceedings would not be useful. *Garrison*,

759 F.3d at 1019-20; *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396,

1399 (9th Cir. 1988). But where there are outstanding issues that must be resolved

before a determination can be made, and it is not clear from the record that the ALJ

ORDER - 22

would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Even if the ALJ were to fully credit Plaintiff's symptom testimony and Dr. Barnard's opinion, the evidence would still present outstanding conflicts for the ALJ to resolve. Therefore, further proceedings are necessary for the ALJ to properly address the credibility of Plaintiff's symptom reports and properly weigh medical opinions in the record. The ALJ may also need to supplement the record with any outstanding evidence of Plaintiff's mental and physical capacity and take testimony from a medical expert at a remand hearing. For this reason, this matter is remanded for the ALJ to reconsider the Plaintiff's symptom testimony and the medical evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. **IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 13) is **GRANTED.**

2. Defendant's motion for summary judgment (ECF No. 14) is **DENIED.**

3. Application for attorney fees may be filed by separate motion.

ORDER - 23

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR PLAINTIFF**, provide copies to counsel, and **CLOSE** the file.

DATED this August 7, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24